Opinion of
the Court.
THIS is a cause on which the second and fourth Judges cannot adjudicate, with propriety, and therefore refused to sit. Whereupon the other two Judges (not being also disqualified) constituted the court for the trial this cause, agreeably to the act of assembly in such cases made and provided.
This case is as follows: On the 23d of May 1804, the court of appeals pronounced a decree between the present parties, [Pr. Dec. 274,] which was predicated on the invalidity of the locations under which the appellee claims the land in controversy, the objects called for in those locations not having been proved to possess *57 that degree of notoriety which was deemed essential to render the entries sufficiently precise and certain. To set aside the decree, the appellee exhibited his bill in the Fayette circuit court, partly in the nature of a bill of review, and also alleging that the decree had been obtained through the fraud of his adversary.
There must be a correspondence between the allegata & probata in chancery, as well as in law.
Where a defendant in ejectment confesses judgment, no apprehension, however well grounded, that the plaintiff will dispossess him of land not included in the plaintiff’s patent, will justify an application to chancery; because his relief at law would be clear and adequate.
As a bill of review, the principles established during the present term of this court, in the cases of Respass vs. M'Clanahan, and South vs. Bowles, [Hard. 342 and 451,] render it unsustainable, and it was properly abandoned in the argument. To establish the fraud of his adversary in obtaining the decree of the 23d May 1804, the appellee alleges, that upon the execution of an order of survey in the original suit, Jacob Fishback, as agent of the appellee, attended on the ground, with Alexander Montgomery, who is alleged to have been authorised to act for Robinson in the business; that it was proposed by Fishback, and acceded to by Montgomery, that the latter should not put Fishback to the proof of such facts as he, the said Montgomery, knew to exist; that Fishback, on his part, should observe the like conduct towards Montgomery; and that, contrary to this agreement and understanding, the appellant’s counsel contended, on the last hearing in the court of appeals, that the objects called for were not notorious, whereby he, the appellee, lost every foot of his land. This appears to us to be the only allegation relied on in the bill, as showing the fraud on which the appellee relies for relief; and as the general rule, as well in chancery as at law, is, that the allegata et probata must correspond, it is evident that this allegation will not justify the introduction of proof showing another distinct contract, or a case totally different as to the time and circumstances, and to which the defendant had never been required to respond. Therefore, it is not necessary to decide whether another contract, which it is stated was proved to have taken place, not on the execution of the survey, but in court, afterwards, and not between Montgomery and Fishback, is sufficiently supported by proof; or, if supported, could furnish a just ground for relief; because it never was made a point of controversy between the parties, not having been alleged on the one side, and denied on the other, and testimony establishing it was not proper between them; for the most correct definition of testimony, is, that which elucidates and *58 makes clear the point in issue. If the appellee had proper to put it in issue, he had it as much in his power to have done so by the forms of proceeding in chancery, as he could at common law. Having failed to allege it, if it existed, he could not afterwards have the benefit of it, without amendment to his bill, which he failed to make.
But it has been contended, that the latter contract is a recognition of the first, or a consequence of it. Let it be either, it cannot exceed the first, by being made to embrace a subject not within the first; for then, so far at least, it would be a separate and independent contract, and liable to the objection before stated. And so far as it is only a recognition or consequence of the former contract, it must certainly derive its force and operation, and depend for its existence upon the the first contract; and if that is not fully proved, or as proved is ineffectual to sustain the appellee’s claim to relief, all its recognitions, incidents or consequences must be equally inefficient in this case. This leads us to the consideration of that contract itself, as to which, it appears to us that Montgomery had no right to make any contract to admit the notoriety of the objects called for in the entry. Every delegation of power to an agent, must be limited to the particular subject of it, and such things as necessarily connect themselves there with. The allegation in the bill, as to Montgomery’s power, is, that he was authorised to act for Robinson “in that business,” referring particularly to the execution of the order of survey. Under such a limited power, it might as well be contended, that he would have had a right to transfer the land itself, as to admit the notoriety of the objects called for, that being a subject in no way connected with the immediate object or end of executing an order of survey, which is generally a means to establish identity, by showing the relative situation of objects. But if Montgomery had the power, it does not appear, nor is it alleged, that he did agree to admit the notoriety of those objects. He was (giving the contract the utmost latitude,) only bound to admit such facts as he, the said Montgomery, knew to exist. It does not appear, nor is it any where in the bill alleged, that he knew those objects were notorious at the date of the entries aforesaid; and the appellee alleges that he firmly believes that if the calls in his location for Robinson’s survey and Boone’s creek, had *59 been particularly mentioned, and required to be admitted, he, the said Montgomery, would have admitted them without hesitation, and would have agreed to dispense with all proof relative to those calls. By expressly alleging, that if the calls for Robinson’s survey and Boone’s creek had been mentioned, he admits they were not mentioned; by alleging that if they had been required to be admitted, he admits they were not required to be admitted; and by stating that, in those events, Montgomery would have agreed to dispense with proof relative to those calls, equally demonstrates that he did not dispense with such proof.
Upon the whole, it evidently appears that the notoriety of those objects was not in contemplation of either party. It was not expressed, and there is no reason to suppose that Montgomery understood the contract in that way; and from the nature of the contract itself, if it may be called one, connected with the business they were then engaged in, and the objects for which they had then met, there is the strongest reason against extending the contract, by implication, to embrace notoriety, a subject no way connected with the execution of the business in which they were then engaged, and to which the conversation relative to admitting facts, could not have alluded. Therefore, if there were no contract to admit notoriety, (and there seems to be none,) there could be no breach of contract in refusing to dispense with such proof, and consequently, no foundation for setting aside the former decree of this court, which, whether right or wrong upon its merits, must stand, unless the appellee had alleged, and proved a fraud or deception in the case, that would have justified us in opening it, which he has not done.
It is also alleged in the bill, that a confession of judgment was inadvertently made in the action of ejectment, under which, the appellee says, he fears the appellant will dispossess him of land not contained within the boundaries of the appellant’s patent. The appellee denies that he intends to acquire possession of any other land than what is contained in his patent; and it appears to us, that the confession in this case could not be for any land that was not included in the patent; and if the appellant should acquire possession of more, the appellee has a plain, natural and adequate remedy at law, and cannot be indulged in going into a court of equity on this account.